**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JACOB MABIE, | ) | |
| | ) | |
| on behalf of himself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| SMITTY'S SUPPLY, INC. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| -and- | ) | |
| | ) | |
| TRACTOR SUPPLY COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff on behalf of himself and all others similarly situated, and for his

Class Action Complaint states and alleges as follows:

## INTRODUCTION

1.      For years, Defendants have deceptively and misleadingly labeled, marketed and

sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303"

designation is obsolete and 303 specifications have not been available for over forty (40) years.

Defendants have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic

fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective

benefits when, in fact, Defendants knew, or should have known, the fluid they are selling does not

meet all listed manufacturer specifications and does not contain the anti-wear and protective

properties required in Tractor Hydraulic Fluid.  Instead, the "303" fluid is a fluid mixed from line

wash and other lubricant products (including some used products) that are not suitable for use as ingredients in a tractor hydraulic fluid.

2.      Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.  It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment.  In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and then effective THF product.

3.      Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient— sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.  Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.

4.      After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including initially offering J14B, J20A and J20B.  Many other manufacturers created and sold fluids that purported to be similar to these new products while others continued to offer a "303" product.  The J14B specification became obsolete in the late 1970s.  J20A and J20B were then offered and, during the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace.  The Quatrol program required blenders and sellers of competing THF products to submit test data to

Deere prior to the use of the J20A/B specification on their product labels, to ensure the products met the advertised specifications.

5. In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. John Deere then and now manufactures and sells THF meeting a specification called J20C or J20D (low viscosity). The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products which they contend meet the J20C specification in order to compete with John Deere. The following timeline illustrates the history of 303 THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**
JOHN DEERE THF SPECIFICATIONS

| | 1960 | 1974 | 1978 | 1989 | 2017 |
| | J303[1] | J14B | J20A[2] | J20C[2] | |
| | | | J20B[3] | J20D[3] | |

Discontinued
Current

Footnotes:
1. There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2. Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)
3. Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

| John Deere Specification | Comment | JD Issue Date |
|---|---|---|
| JDM J20D[3] | THF for cold climates | 1989 - Current |
| JDM J20C[2] | Primary THF specification | 1989 - Current |
| JDM J20B[3] | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A[2] | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303[1] | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

6. John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

3

7.      Defendants deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.  This was deceptive as there is no known "303" specification, and there is no way for manufacturers, sellers, or anyone else to truthfully claim the products meets or is in compliance with any such specification.

8.      Nonetheless, Defendants manufacture and sell  their Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam 2 Promax 303 Tractor Hydraulic Oil (together referred to as "303 THF Products") as a lower cost alternative, and offer them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers' specifications, have effective lubricant and anti-wear additives and properties, and are safe for use in purchasers' equipment. While Cam2 Promax 303 Tractor Hydraulic Oil, Super S 303 Tractor Hydraulic Fluid and Super S Super Trac 303 Tractor Hydraulic Fluid are three separate product names, they are all the same product:  the fluids come from the same ingredients, the same tanks, the same formulations and blends and the same manufacturing plant.  These THF Products have been sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendants seek to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.

9.      In addition to deceptively promoting a designation that is obsolete, Defendants use poor quality base oils, waste oil, line flush, used oils and diluted additive packages in their 303 THF products in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of additive packages, Defendants' 303 THF Products not only lack the required lubricant and protective benefits offered to purchasers, the fluids actually

expose purchasers' equipment to increased wear and risk of damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, the 303 THF Products are labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.     In November 2017, because of the deceptive nature of the 303 THF Products, the failures of the 303 THF Products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering these type of "303" tractor hydraulic fluid products for sale in Missouri.  The states of Georgia and North Carolina followed suit.

11.     Despite the ban of "303" THF in several states and the increased scrutiny on those products throughout the country, Defendants continued to sell their 303 THF products in the state of Texas and all other states where the fluid has not been banned.  As of the time of this filing, Defendants still sell their THF products in those same states other than Missouri, Georgia, and North Carolina.

12.     Defendants' conduct has harmed and continues to harm purchasers like Plaintiffs, who purchased Defendants' 303 THF Products that were offered and sold as acceptable tractor hydraulic fluids that meet certain manufacturer specifications, as fluids that are safe for use in farm, construction and logging equipment, and as having certain characteristics and qualities that protect equipment from wear and damage.

13.     In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiff and other purchasers received 303 THF

Products that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications on these products. These products therefore exposed purchasers' equipment to harm, increased wear and damage, and caused purchasers to overpay for a product that was worthless and/or worth much less than the sale price.

14. In late 2017, around the time of the stop sale order and ban of 303 THF in Missouri and other states, Defendant Smitty's modified the label of its Super S Super Trac 303 Tractor Hydraulic Fluid, changing the name to "Super S 303 Tractor Hydraulic Fluid." Because the photos of the equipment on the labels were deceptive and misleading, Smitty's removed the pictures of the modern equipment and replaced those pictures with images of older, simpler tractors on the front of the label.

15. At that time, however, no others changes were made to the labels and the names of equipment manufacturers and the claims of the fluids' performance remained on the labels despite the fact that management employees at Smitty's were also concerned about the deceptive and misleading representations on the labels regarding the physical and performance properties of the fluid, the representations about the testing that was purportedly performed on the fluid, and the list of equipment manufacturers' names contained on the label of the 303 THF Products. Incredibly, Smitty's continued to sell the its 303 THF Products in Texas and throughout the United States with those misrepresentations knowingly being made to purchasers like Plaintiffs.

16. Like many other consumers throughout the country, Plaintiff Jacob Mabie purchased Defendants' 303 THF Products in Texas and suffered damage as a result.

6

## PARTIES

17.     Plaintiff Jacob Mabie is a citizen and resident of Michigan.

18.     Defendant Smitty's Supply, Inc. is a for-profit company incorporated in the State of Louisiana and with its principal place of business at 63399 Hwy. 51 North, Roseland, Louisiana 74056. Defendant Smitty's Supply, Inc. owns Cam2 and Cam2 is a division of Smitty's. Smitty's has advertised and sold its products, including its Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam2 Promax 303 Tractor Hydraulic Oil, throughout the state of Texas and the United States, including at Tractor Supply Company and other retail stores.

19.     Defendant Tractor Supply Company (Tractor Supply) is a for-profit company incorporated in the State of Delaware, authorized to do business in the state of Texas and with its principal place of business in Brentwood, Tennessee. Defendant Tractor Supply Company has advertised and sold its products throughout the state of Texas and the United States at its retail stores.

20.     Defendants' conduct has harmed purchasers like Plaintiff by inducing them to purchase and use Defendants' 303 THF Products through the false promises and representations on the labels and advertising materials, including representations that the 303 THF Products are suitable for use as tractor hydraulic fluid, that the 303 THF Products meet certain specifications and by directly or implicitly representing that the products are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage when, in reality, the products do not meet any specifications, are made component products that are not suitable for use in blending tractor hydraulic fluid, and cause harm, increased wear and damage to Plaintiff's equipment.

7

## JURISDICTION AND VENUE

21.    This action is filed in United States District Court for the Southern District of Texas, Which is an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in Texas and elsewhere.

22.    The United States District Court for the Southern District of Texas has personal jurisdiction over Defendants because Defendants transact business in Texas, through their various advertising methods and product sales directed toward Texas residents.  Additionally, Plaintiff Mabie purchased the products at issue in Texas.

23.    Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).  The amount in controversy in this action exceeds $5,000,000.00, exclusive of interest and costs.  Upon information and belief, Defendants' retail sales of the Cam2 ProxMax 303, Super S 303, and Super S SuperTrac 303 products total more than $2,000,000.00 in Texas during the stated Class Period.  On behalf of himself and all Class Members, Plaintiff seeks damages which include return of all amounts paid by Texas purchasers for the Cam2 ProxMax 303, Super S 303, and Super S SuperTrac 303 products.  Also upon information and belief, the costs of a common flushing remedy and other common repairs to equipment necessitated as a result of use of the products at issue exceeds $3,000,000.00.  On behalf of himself and all Class Members, Plaintiff also seeks recovery for the costs of these common flushing remedies and repairs.  Finally, on behalf of himself and Class Members, Plaintiff also seeks punitive damages and attorneys' fees.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

24.    Defendant Tractor Supply is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within the state of Texas and throughout the United States.

25.     Defendant Smitty's (which as set forth above, includes Cam 2) is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within the state of Texas and throughout the United States.

26.     During some or all of the time period from 2014 to the present, Defendant Tractor Supply Company sold and advertised in yellow buckets 303 THF Products called Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and/or Cam2 Promax 303 Tractor Hydraulic Oil.

27.     During some or all of the time period from 2014 to the present, Defendant Smitty's manufactured and advertised the Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam2 Promax 303 Tractor Hydraulic Oil which was sold by Tractor Supply Company and other retailers.

<u>**Defendants' Deceptive Labeling, Marketing and Advertising**</u>

28.     During some or all of the time period from 2014 to the present, Defendants offered the 303 THF Products for sale at stores all over Texas as a product suitable for use as a tractor hydraulic fluid and as a fluid that provided certain performance benefits and met or had equivalency to a wide number of manufacturers' specifications.  The average sale price for a five (5) gallon bucket of Defendants' 303 THF Products was generally around $25.00.

29.     Defendants falsely and deceptively labeled, marketed and offered for sale the 303 THF Products (1) as meeting or having equivalency to manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying or having equivalency to John Deere's JD-303 specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and

9

(5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

30.     Defendants' labeling, marketing, advertising and sale of the 303 THF Products has been widespread, continuous and contained on various signs, labels and advertisements throughout Kansas for years.

31.     Until late 2017 or early 2018, Defendants' Super S Super Trac 303 Tractor Hydraulic Fluid was specifically labeled, marketed and advertised as follows:



## Super S® SuperTrac® 303 Tractor Hydraulic Fluid
TECHNICAL PRODUCT INFORMATION

### Super S SuperTrac 303 Tractor Hydraulic Fluid
**Super S SuperTrac 303 Tractor Hydraulic Fluid** is designed to lubricate the transmission, differential and final drive gears in tractors and implements. It is a multi-functional fluid used as a hydraulic medium, and as a power steering, power brake, power take-off (PTO), and implement drive fluid.

### FEATURES/ BENEFITS
- Lubricates the transmission, differential and final drive gears in tractors and implements
- Provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pump
- Protects against rust and corrosion
- Provides excellent results for foam suppression and water sensitivity
- Controlled frictional characteristics permit the wet brakes to hold properly, reduces brake chatter and provides for smooth engagement of power take-off (PTO) clutches.

### APPLICATIONS
**SuperTrac 303 Tractor Hydraulic Fluid** is designed for use as a replacement fluid for the hydraulic, wet brake, and transmission requirements of equipment manufacturers where a product of this quality is recommended, including:

| | | |
|---|---|---|
| Allis Chalmers | Allison | Caterpillar |
| Deutz | Ford Tractor | International Harvester |
| J I Case/David Brown | John Deere 303, J20A | Kubota |
| Massey Ferguson | Oliver | White |

32.     The Super S Super Trac 303 buckets contain the following, similar information:



33.     These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites.

34.     During some or all of the past five years, the Cam2 Promax 303 Tractor Hydraulic Oil buckets contained the following, similar information:

# PROMAX™ 303 Tractor Hydraulic Oil



**CAM2 PROMAX™ TRACTOR HYDRAULIC 303 OIL** is general-purpose lubricant for farm and industrial tractors and construction equipment. CAM2 PROMAX™ Tractor Hydraulic 303 Oil provides performance in the areas of anti-wear, PTO clutch, rust protection, extreme pressure properties, water sensitivity, foam suppression and brake chatter reduction. CAM2 PROMAX™ Tractor Hydraulic 303 Oil is recommended for ambient temperatures between +32°F and 104°F (0°C to 40°C). For ambient temperatures outside this range or where a premium tractor hydraulic/transmission oil is required, please use a CAM2 Premium Tractor Hydraulic Fluid. CAM2 PROMAX™ Tractor Hydraulic 303 Fluid is suitable as a replacement for the following manufacturers where a tractor hydraulic fluid of this performance level is recommended:

Allis Chalmers®
Allison®
Caterpillar®
Deutz®

Ford® Tractor
International Harvester®
JI Case®/David Brown®
John Deere® 303, J20A

Kubota®
Massey Ferguson®
Oliver®
White®

*Misapplication may cause severe performance problems. CAM2® PROMAX™ Tractor Hydraulic 303 Fluid has not been recommended by any OEM for model years later than 1974. For equipment built after 1974 requiring multi-functional fluid, use a CAM2® Premium Tractor Hydraulic Fluid.*

| | |
|---|---|
| 3/1 GAL | 80565-16731 |
| 3/2 GAL | 80565-16732 |
| 5 GAL | 80565-16705 |
| 55 GAL | 80565-16755 |
| BULK | 80565-16711 |

35.     From late 2017 through 2018, the Super S 303 Tractor Hydraulic Fluid buckets contained the following information:



Super S 303 TRACTOR HYDRAULIC FLUID

Super S® 303 Tractor Hydraulic Fluid has been field tested and is suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended:

• Allis Chalmers
• Caterpillar
• Deutz
• Ford Tractor

• International Harvester
• JI Case/David Brown
• John Deere 303
• Kubota

• Massey Ferguson
• Oliver
• White

Super S® 303 Tractor Hydraulic Fluid will provide excellent results in the areas of:

• Anti-Wear Properties
• Brake Chatter
• Extreme Pressure Properties
• Foam Suppression

• PTO Clutch Performance
• Rust Protection
• Water Sensitivity

WARNING: THIS PRODUCT IS NOT SUITABLE FOR USE IN MOST EQUIPMENT MANUFACTURED SINCE 1974. MISAPPLICATION IN NEWER EQUIPMENT MAY CAUSE UNSATISFACTORY PERFORMANCE OR EQUIPMENT HARM. FOR EQUIPMENT BUILT AFTER 1974, USE SUPER S® PREMIUM UNIVERSAL TRACTOR HYDRAULIC FLJID (SUS 236) AS A PREMIUM, MULTI-FUNCTIONAL LUBRICANT.

12

36.     Defendants' labeling thus specifically represented that the 303 THF Products being sold were acceptable and suitable for use as a tractor hydraulic fluid and were:

- Field Tested

- Suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality if recommended:  Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303, Kubota, Massey Ferguson, Oliver, White

- Providing excellent results in the areas of:
  1. Anti-wear properties
  2. Brake Chatter
  3. Extreme Pressure Properties
  4. Foam Suppression
  5. PTO Clutch Performance
  6. Rust Protection
  7. Water Sensitivity

37.     By naming, labeling, marketing, advertising and selling the 303 THF Products in the foregoing manner, and by describing the product using words such as "303" and "multi-functional," Defendants sought to create, and did create, an image of the 303 THF Products in the minds of Plaintiffs and other purchasers  that would lead a reasonable purchaser  to conclude that Defendants' 303 THF Products were completely safe and effective for use in their equipment and in all equipment made by the listed manufacturers.

38.     Defendants' THF Products name, labeling, advertising and marketing of their 303 THF Products was material to the reasonable purchaser.

39.     At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding 303 THF Products were false, deceptive and misleading to consumers and others seeking to purchase tractor hydraulic fluid.

13

40.     The John Deere "303" designation is over 50 years old and has been obsolete for many years.  Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil— have been banned since the 1970s and are no longer available for use.  As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no longer any specifications for 303 fluid.   Defendants knew or should have known that at the time they were marketing and selling the 303 THF Products during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Products met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Products were in compliance with any known specifications.

41.     As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets lacked some or all of the additives required to provide the advertised "results," "features" and "benefits."

42.     As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets were made using flush oil, line wash or other waste oil products containing motor oil components and other additives that are never appropriate for use in a tractor hydraulic fluid.

43.     As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Products as tractor hydraulic fluids that met or were equivalent to the specifications of all manufacturers listed on the label because, on information and belief, either 1)

14

Defendants' test data showed the viscosity, pour point and additive levels of the 303 THF fluids varied, was inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the 303 THF Products always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in purchasers' equipment.

44.     At no point in time, on the label of the 303 THF Products or otherwise, did Defendants tell purchasers the truth, including that:

     a. The "303" specification does not exist, is obsolete, could not be tested, and true 303 fluid was banned in the 1970s;

     b. Defendants used low quality base oil, flush oil, line wash, used transformer oil, used turbine oil or other reclaimed oil in the 303 THF Products, all of which are unfit for use in hydraulic systems and should never be contained in a tractor hydraulic fluid;

     c. The 303 THF Products contained a "down-treated" and/or no additive package;

     d. Defendants' test data did not confirm that all of the 303 THF Products met all manufacturers' specifications;

     e. Defendants have no idea whether all of the 303 THF Products they offered for sale met the requirements of, has acceptable anti-wear properties, or is suitable for use in tractors or other equipment; and

     f. The 303 THF Products may expose purchasers' equipment to increased wear and damage.

45.     Instead, the 303 THF Products were deceptively offered for sale as a fluid containing quality base oils, sufficient additives, and meeting or being equivalent to the long-defunct and unknown "303" specification and many other equipment manufacturer specifications.

### The State of Missouri's Testing of 303 THF

46.     Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the damage the fluids can do to tractors and other equipment. The Missouri Department of Agriculture (MDA) is one such entity.

47.     In the summer of 2017, the MDA sampled fourteen (14) different 303 THF products, many of which claimed to meet manufacturers' specifications and claimed to work in almost every tractor. Defendants' 303 THF Products Super S SuperTrac 303 and Cam2 Promax 303 were purchased in Missouri by the MDA in 2017 and were two of the products tested.

48.     The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

49.     As a result of the testing, the MDA concluded that all fourteen (14) of these 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

50.     Defendants' 303 THF Products were two of the fluids that failed to meet current specifications. More specifically, Defendants' Super S SuperTrac 303 THF Product had a viscosity (Kinematic Viscosity @ 100C) level of 7.647. Defendants' Cam2 Promax 303 THF Product has a viscosity (Kinematic Viscosity @ 100C) level of 7.633. The J20C specification for

16

KV@100C requires a minimum of 9.1 and therefore Defendants' 303 THF Products both fell short of the standard.

51.    Defendants 303 THF product was also found to have additive levels of calcium, phosphorous and zinc that were well below (50% or more less than) the additive levels found in fluids meeting the J20C specification.

52.    Furthermore, Defendants' 303 THF Products' Kinematic Viscosity @ 100C level does not meet many or all of the specifications of the other manufacturers Defendants list on the labels and advertising of their 303 THF Product.

53.    The MDA's tests also indicated that Defendants' THF product used waste, or "line flush" oil, which contain ingredients inappropriate for use in a tractor hydraulic fluid.

54.    The MDA notified Defendants, by letter, of their findings regarding the 303 THF products in the marketplace. The MDA notified Defendants they felt the 303 THF Products were mislabeled, misbranded, and that the labels were deceptive and misleading and that the products were exposing equipment to increased wear and damage. As a result, the MDA ordered Defendants to stop selling their products in Missouri.

**Defendants Continue to Sell the Deceptive, Poor Quality 303 THF Products**

55.    Despite receipt of the MDA's stop sale notices, test results and concerns regarding the damage that was being caused to equipment, Defendants continued to manufacture and sell the product in Texas and throughout the United States. Defendants did not in any way change the formula, component products, or manufacturing process of the 303 THF Product after the State of Missouri's ban.

56.    Rather than pull the 303 THF Product off the market in all states, Defendants decided to continue to sell the 303 THF Product. They made one change to the labels: the colorful

17

photos of modern tractors were replaced with older, simpler tractors. However, in all other respects, the product was the same, and Defendants made no changes to the product formulation or the manufacturing/blending process. The labels continued to deceptively list the "303" designation, the equipment manufacturers' names, and the false and misleading claims of field testing and performance benefits as set forth below:



57. In addition, Defendants continued to sell the 303 THF Product and make those representations about the quality and performance properties of the product even though within Smitty's at the highest levels of management, Smitty's was acknowledging and admitting in late 2017 and early 2018 that it knew the product did not meet any manufacturer specifications, that the label was confusing to purchasers, and that it did not have any data or evidence on which to base or substantiate the performance qualities represented on the label.

58. Smitty's had no support for its claims of performance with respect to Super S 303 THF, yet Defendants continued to sell the product to purchasers throughout the United States as a fluid recommended for use in almost all manufacturers' equipment, with representations of

excellent performance in the areas of anti-wear properties, brake chatter, extreme pressure properties, foam suppression, PTO clutch performance, rust protection and water sensitivity.

59.     In 2018 and earlier, in stark contrast to the quality represented to purchasers Smitty's knew for a fact that the Super S 303 THF did not provide adequate wear protection and that its product could lead to excess deposit buildup inside transmissions and other parts of equipment and expose equipment to increase wear and damage.

**Plaintiffs' Experience with Defendants' Labeling and Products**

60.     Plaintiff purchased Defendants' 303 THF Products in March of 2017 at the Tractor Supply Company store in Baytown, Texas.

61.     Plaintiff purchased Defendants' 303 THF Products containing the label representations set forth above.

62.     The 303 THF Product was used in Plaintiff's truck, tractor, skidsteer, brush-hog, and woodcutter.

63.     As a result of Defendants' manufacturing and offering the 303 THF Products for sale, Plaintiff purchased a tractor hydraulic fluid that was falsely and deceptively offered for sale as a "303" fluid that contained quality base oils and additives, met required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and was likely to expose equipment to increased risk of wear and damage.

64.     Plaintiff reasonably relied upon Defendants' representation that the fluid was a "303" fluid and Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

65.     All reasonable purchasers would consider Defendants' 303 THF Products to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Products were of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Products would expose all equipment to increased wear and damage.

66.     A reasonable purchaser would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid.  As a result of using Defendants' 303 THF Products, Plaintiff and Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Products were different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and/or (f) suffered increased and excessive wear and damage to equipment, including damage to valves, rotators, gears, seals and hydraulic systems.

67.     When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiff and Class Members their 303 THF Products, Defendants knew or should have known those products (1) did not meet manufacturer specifications and were not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) were not an adequate substitute for, were not equivalent to, and did not satisfy John Deere's JD-303 specifications; (3) were not adequate to provide extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) were not adequate to protect against rust and corrosion; and (5) were not appropriate for use in equipment of manufacturers including Allis-

Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere 303, J20A, Oliver, Ford and Caterpillar.

68.    Plaintiff used the 303 THF Products in the manner in which Defendants advised it could and should be used.

69.    As a result of Defendants' 303 THF Products not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated consumer protection acts, breached express and implied warranties, fraudulently or negligently induced Plaintiff and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

70.    Defendants' manufacture, labeling, and sale of the 303 THF Products was deceptive and misleading in at least the following respects:

(a) Defendants' use of "303" in the name of the product was deceptive and misleading.  The 303 THF Products did not use John Deere 303's formula and would not meet or be the equivalent to the specifications for John Deere 303. Defendants packaged their 303 THF Products in the yellow bucket with illustrations of modern tractors and equipment so as to further deceive and mislead and create the impression that the 303 THF Products were legitimate tractor hydraulic fluids that met the specifications for John Deere 303 and other John Deere equipment.

(b) Defendants placed a deceptive and misleading statement on the product labels by claiming that John Deere 303 is one of the specifications for which the 303 THF Products are "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

21

(c) Defendants placed a deceptive and misleading statement on the product labels by listing eleven (11) other manufacturers as those for which the 303 THF Products are "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended," without specifying the equipment/specifications purportedly met for each of those eleven (11) manufacturers.

(d) Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels.

(e) Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Products purportedly may be used, when in reality the products do not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(f) Defendants made a deceptive and misleading statement on the product labels by representing that the products have been field tested.

(g) Defendants made a deceptive and misleading statement on the product labels when claiming that the 303 THF Products "will provide excellent results in the areas of:

- Anti-wear properties
- Brake Chatter
- Extreme Pressure Properties
- Foam Suppression
- PTO Clutch Performance
- Rust Protection
- Water Sensitivity"

(h) Defendants engaged in misleading and deceptive conduct with regard to their 303 THF Products in failing to disclose that the product contained flush oil, line

22

flush, waste oil and/or contained other materials that should never be contained in tractor hydraulic fluid.

71.     The conduct listed in paragraph 70(a)-(h) constitutes deceptive and unconscionable business practices in violation of consumer protection laws.

72.     This action is brought by Plaintiff against Defendants to recover all money paid by Plaintiff and Class Members to Defendants for purchase of their 303 THF Products which were labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiff and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class of similarly situated persons:

> All persons and other entities who purchased Super S SuperTrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and/or Cam2 ProMax 303 Tractor Hydraulic Oil in Kansas at any point in time from August 30, 2015 to present, excluding those who purchased for resale.

74.     Also excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

75.     The 303 THF Products at issue were sold across Texas and the United States through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

23

76.     The proposed Class is so numerous that joinder of all Class Members is impracticable.  Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members of the Class.

77.     There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members.  The questions of law and fact common to each Class arising from Defendants' actions include, without limitation, the following:

a.  The components and qualities of Defendants' 303 THF Products, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Products;

b.  Whether Defendants were unjustly enriched;

c.  Whether Defendants were negligent;

d.  Whether Defendants breached the express warranties provided with regard to the 303 THF Products;

e.  Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Products;

f.  Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Products;

g.  Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the obsolete nature of the products and the specifications the products claimed to meet;

h.  Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Products was deceptive, unfair, and/or dishonest as alleged in paragraphs 7-9, 11-15, 28-45, 55-59, 63, 65-67, and 69-71, above;

i.  Whether Defendants' 303 THF Products were being labeled, advertised and marketed as alleged in paragraphs 7-9, 11-15, 28-45, 55-59, 63, 65-67, and 69-71, above;

j.  Whether Defendants' 303 THF Products in actuality were as alleged in paragraphs 12-13, 16, 39-54, 57-59, 66-67, and 69-71, above;

24

k.  Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

l.  Whether Defendants' representations regarding their 303 THF Products were false and made knowingly by Defendants;

m.  Whether Defendants' representations were false and made negligently by Defendants; and,

n.  Whether use of the 303 THF Product caused and/or exposed equipment to damage.

78.  The representative Plaintiff's claims are typical of those in the putative Class because each purchased Defendants' 303 THF Products and was similarly treated.

79.  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of other Members of the Class. The interests of the other Class Members will be fairly and adequately protected by Plaintiff and counsel, who have extensive experience prosecuting complex litigation and class actions.

80.  A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action. In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

81.  A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

82.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiff.   All Class Members who purchased Defendants' products were treated similarly.   Thus, all Class Members have the same legal right and interest in relief for damages associated with the violations enumerated herein.

83.   Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

84.   Plaintiff asserts in Counts I through VIII, below, the following claims on behalf of themselves and the Class:

- Count I – Negligence

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Breach of Implied Warranty of Fitness for Particular Purpose

- Count V – Unjust Enrichment

- Count VI – Fraud/Misrepresentation

- Count VII – Negligent Misrepresentation

- Count VIII – Texas Deceptive Trade Practices Act Violations

## COUNT I
### (Negligence)

85.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

86.   Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF

26

Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Products.

87.    Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

a.    Distributing and using misleading labeling information regarding the 303 THF Products qualities and OEM specifications met by product;

b.    Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Products and potential harm to equipment caused by use of the 303 THF Products in equipment for which it does not meet specifications;

c.    Failing to adequately ensure the 303 THF Products manufactured and sold met or were equivalent to the advertised specifications;

d.    Failing to utilize adequate testing and other controls to ensure the 303 THF Products met the advertised specifications; and,

e.    Instituting and/or allowing careless and ineffective product manufacturing protocols.

88.    As a result of Defendants' negligence, Defendants' 303 THF Products had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

89. Defendants' negligence caused or contributed to cause injuries and damages to Plaintiff and the Class Members and caused Plaintiff's and the Class Members' equipment to suffer harm and damage, including valve and rotator leaks, wear, damage and leakage in the seals,

exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiff and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

90. Plaintiff and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

91. Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiff and Class Members, such that punitive damages are thus warranted.

## COUNT II
### (Breach of Express Warranty)

92. Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

93. Plaintiff and Class Members purchased Defendants' 303 THF Products.

94. As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Products.

95. The common statements Defendants made in the name and on the label of the 303 THF Products were made to induce Plaintiff and Class Members to purchase the 303 THF Products and/or were a material factor in inducing Plaintiff and Class Members to purchase the 303 THF Products, and therefore became part of the basis of the benefit of the bargain and an express warranty.

96. As set forth above, the THF 303 Products did not conform to the statements of Defendants. As a result, Plaintiff and the Class Members did not receive goods as warranted by Defendants.

28

97.     Defendants have received from Plaintiff timely notification of the defects in their THF 303 Products.

98.     The failure of the THF 303 Products to conform to the statements of Defendants has caused injury and damage to Plaintiff and Class Members.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

99.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

100.    Defendants directly or indirectly sold the 303 THF Products to Plaintiff and Class Members for use as described above.

101.    As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their ordinary use and the use described by Defendants.

102.    Plaintiff and Class Members used the 303 THF Products for their ordinary purpose and the use described by Defendants.

103.    Defendants have received from Plaintiff timely notification of the defects in their 303 THF Products.

104.    The failure of the 303 THF Products to be fit for their ordinary purpose has cause injury and damage to Plaintiff and Class Members.

## COUNT IV
### (Breach of Implied Warranty of Fitness for Particular Purpose)

105.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

106.    Defendants directly or indirectly sold the 303 THF Products to Plaintiff and Class Members for use as described above.

29

107.     As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their particular purpose for use as universal hydraulic fluid for tractors and/or other equipment.

108.     Defendants knew or should have known of the uses for which the 303 THF Products were purchased.

109.     Plaintiff and Class Members reasonably relied upon Defendants' judgment that the 303 THF Products were fit for use as universal hydraulic fluid for tractors and/or other equipment.

110.     Defendants have received from Plaintiff timely notification of the defects in their 303 THF Products.

111.     The failure of the 303 THF Products to be fit for their particular purpose has caused injury and damage to Plaintiff and Class Members.

## COUNT V
### (Unjust Enrichment)

112.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

113.     As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Products, Plaintiff and the Class Members purchased Defendants' 303 THF Products and conferred a benefit upon Defendants by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendants appreciated and accepted.

114.     Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Products.

30

115.    Defendants were enriched at the expense of Plaintiff and other Class Members through the payment of the purchase price for Defendants' 303 THF Products.

116.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

117.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the other Class Members, in light of the fact that the 303 THF Products purchased by Plaintiff and the other Members of the Class were not what Defendants represented them to be. Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiff and the other Members of the Class for the monies paid to Defendants for the 303 THF Products.

118.    By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class Members.

## COUNT VI
### (Fraudulent Misrepresentation)

119.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

120.    Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

121.    Defendants' representations set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment,

31

that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

122.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiff and other Class Members rely on such representations.

123.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

124.    Defendants' representations were material to the purchase of the 303 THF Products.

125.    Plaintiff and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

126.    Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Products constitutes fraud on Plaintiff and all Class Members.

32

127.    Plaintiff and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Products.

128.    As a direct and proximate result of Defendants' illegal conduct, Plaintiff and Class Members have suffered ascertainable losses of money and other damages.

129.    Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiff and other Class Members.

130.    Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT VII
### (Negligent Misrepresentation)

131.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

132.    Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

133.    Such representations were made by Defendants with the intent that Plaintiff and the Class Members rely on such representations in purchasing Defendants' 303 THF Products.

134.    Such representations were material to Plaintiff's and the Class Members' purchase of Defendants' 303 THF Products.

135.    Such representations were false.

136.    Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

33

137.    Plaintiff and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

138.    Plaintiff and Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the 303 THF Products.

139.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered ascertainable losses of money.

<u>COUNT VIII</u>
**(Violations of Texas Deceptive Trade Practices Act)**

140.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

141.    The Texas Deceptive Trade Practices Act ("DTPA") prohibits false, misleading or deceptive acts and practices in connection with a trade or business.

142.    Plaintiff and Class Members are "consumers" within the meaning of § 17.54(4) of DTPA in that they are individuals who acquired by purchase the goods or products that form the basis of this case, and suffered damages for which they did not receive compensation from any third party, person, or entity.

143.    Plaintiff and Class Members seek to recover damages against each Defendant under DTPA, § 17.41 *et seq,* because Defendants knowingly and/or intentionally breached their implied warranties with respect to the 303 THF Products and also engaged in false, misleading, or deceptive acts or practices in the conduct of their trade of business, as set forth above and in general by (a) representing that the 303 THF Products had characteristics, ingredients, uses, or benefits which they do not; and, (b) representing that the 303 THF Products were of a particular standard, quality, or grade, when they were in fact or another.

34

144.    Defendants engaged in false, misleading or deceptive acts or practices with regard to the 303 THF Products, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of Texas and throughout the United States.

145.    Defendants' conduct set forth in paragraphs 7-9, 11, 14-15, 28-47, 57-58, 70-72, 75, and elsewhere above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were false, misleading, or deceptive acts or practices.

146.    Defendants' conduct set forth in paragraphs 7-9, 11, 14-15, 28-47, 57-58, 70-72, 75, and elsewhere above, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also  false, misleading, or deceptive acts or practices in that Defendants omitted or suppressed a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

147.    Defendants engaged in a pattern of conduct toward Plaintiff and all Class Membes that, when taken in its totality, is and was false, misleading, or deceptive, in violation of the DTPA.

148.    Defendants' conduct in engaging in such false, misleading, or deceptive acts or practices constituted a producing cause of the damages suffered by the Plaintiff and Class Members such that Plaintiff and Class Members have the right and standing to maintain an action against Defendants under the DTPA.

149. The Plaintiffs also have the right and standing to maintain an action against Defendants under the DTPA because Defendants breached their implied warranties and that such a breach constituted a producing cause of the damages suffered by the Plaintiff and Class Members.

150. Plaintiff and Class Members have suffered economic and other damages as a proximate result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

151. Defendants' conduct as described herein was intentional, done knowingly and intentionally, and was in conscious disregard of the rights of Plaintiff and other Class Members.

152. Defendants' conduct is such that an award of treble damages against each Defendant is appropriate.

153. Pursuant to the DTPA, Plaintiff and Class Members are entitled to be awarded Court costs and reasonable and necessary attorneys' fees.

154. Plaintiff provided Defendants notice of the defect in their 303 THF Products, although such notice should be deemed unnecessary in light of the MDA action in 2017.

155. Plaintiff will provide notice of this Complaint to the Consumer Protection Division.

WHEREFORE, Plaintiff, on behalf of himself and the Class described in this Class Action Complaint, respectfully requests that:

A. The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiff and counsel to be adequate representatives thereof;

36

B.  The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiff and the other Members of the Class;

C.  The Court enter an Order awarding Plaintiff, individually and on behalf of the other Members of the Class, the expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D.  The Court enter an Order awarding to Plaintiff, individually and on behalf of other Members of the Class, pre-and post-judgment interest, to the extent allowable; and,

E.   For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members hereby demand a jury trial on all issues of fact and damages in this action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff and Class Members hereby designate the United States District Court for the Southern District of Texas at Houston as the place of trial.

Date:  August 30, 2019                        Respectfully submitted,

EMERSON FIRM, PLLC
BY: */s/ John G.. Emerson_____*
          John G. Emerson, TX Bar No. 06602600
          830 Apollo St.
          Houston, TX 77058
          Tel: (800) 551-8649
          Fax: (501) 286-4659
          Email: jemerson@emersonfirm.com

37

HORN AYLWARD & BANDY, LLC

BY:    /s/ Thomas V. Bender
        Thomas V. Bender, KS Bar #22860
        Dirk Hubbard, KS Bar #15130
        2600 Grand, Ste. 1100
        Kansas City, MO 64108
        Tel: (816) 421-0700
        Fax: (816) 421-0899 (Fax)
        Email: tbender@hab-law.com
                dhubbard@hab-law.com

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:    /s/ Bryan White
        William Carr.  KS Bar #16301
        Bryan T. White KS Bar #23255
        19049 East Valley View Parkway
        Independence, Missouri 64055
        Tel: (816) 373-9080
        Fax: (816) 373-9319
        Email :bcarr@wagblaw.com
                bwhite@wagblaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**